Please all rise. Hear ye, hear ye, hear ye. Son of William Pellet Park, 2nd Judicial District, is now open for suit to adjourn. The Honorable Robert D. Pellet, your time is up. Please be seated. On page 1.2-15-1125, Parentage of M.E.P., a minor. Dan Crowley, Petitioner of Appellant. Dean Adam Tinkins-Oscar. Respondent, Appellant. I go on behalf of Petitioner of Appellant, Mr. Columbus Scott. I go on behalf of Appellant. Respondent, Appellant. Mr. Joel Oscar. Thank you. Mr. Stein? Yes. You may proceed. Good morning, Your Honors. May it please the Court. My name is Alon Stein, S-T-E-I-N, and I represent the appellant in this case, Dana Prouty. Just as a preliminary point, we will stand on our briefs. Ask any points not orally argued. In the meantime, I'll try to hit the key points. Point number one. Illinois never relinquished initial child custody jurisdiction, exclusive continuing jurisdiction, or jurisdiction to modify under Sections 201 through 203 of the UCCJEA. Illinois entered the original custody determination in July of 2010, awarding Prouty sole custody, and therefore, she had initial, Illinois had initial and then exclusive continuing jurisdiction. This is under Section 201 of the UCCJEA and then Section 202. Arizona got involved on an emergency basis in December of 2012 when the appellee, in this case, filed a motion claiming our client was dangerous and suicidal. Section 204 of the UCCJEA allows for temporary emergency jurisdiction to be exercised if a child is present in a state and it is necessary to protect a child from a claimed threat. And that was exercised here by Arizona. Arizona did not have original custody jurisdiction under Section 201 because that means... That was initially acknowledged by the... What did you say, Your Honor? That was initially acknowledged by the Superior Court of Maricopa County. There was an order entered that found that Illinois had original jurisdiction at the time the jurisdiction agreement was entered, correct? I couldn't hear you say that again, Your Honor. The Maricopa County Court found that Illinois had original jurisdiction at the time the joint parenting agreement was entered, correct? Yeah, no one's contesting that Illinois had original jurisdiction. Our whole position is it never relinquished that jurisdiction. Okay, well, what about the exception in the statute? You're talking about the Uniform Child Custody Act. Section 202 that you alluded to, it says a court of the state which has made the child custody determination has exclusive continuing jurisdiction, which is what you were saying. Right. But there's an exception. A court of this state or a court of another state determines that the child, the child's parents, and any other person acting as a parent do not presently reside in the state in the Arizona court found the petitioner signed a severance petition in Arizona listing her and the child's address as being in Phoenix, Arizona. Right. So what's your reaction to that? Our reaction to that is the address on file in Illinois was always an Illinois address. There was never an evidentiary hearing as to whether or not Ms. Prudy lived. Why would there have to be a hearing? Isn't that a judicial admission, counsel? That is just one fact of many under the Akula case that we cited. Whether or not someone presently resides in the state is a fact-based determination, and therefore there needs to be... What is the logic? If somebody files a petition with the court saying they are living in a certain state, isn't that allowing them to have a hearing to determine if their admission is true? Because the case under Akula says whether or not someone presently resides in a state involves facts. There needs to be evidence. There needs to be... In that case, did the party admit to living in that state? I'm not sure whether or not... A judicial admission would trump other facts. When a party signs a document acknowledging their residence in this state, that would trump some other fact that they have some other residence outside of Illinois or some other place that they're... I mean, people have vacation homes all over the country. They try to avoid income tax by traveling to one state when they actually clearly live in another state, and here you have a judicial admission. I would disagree that it is a judicial admission under the UCCJEA that the factor of presently residing has been satisfied. It's your contention that the only way that there could be a judicial admission is if she had stated that for purposes of jurisdiction, I reside in Arizona. I'm saying that the statute calls for presently residing, and that has meaning, and there are cases interpreting that particular term, and that requires a fact-based inquiry at the time. Illinois always was an address on file with the clerk. The attorney general of Arizona, when we submitted that record, stated to Mr. Kafka, Dr. Kafka, that you know that she lives in Illinois. It's in the record. You know that that's the case. And so therefore, for purposes of the UCCJEA, our contention is that there has not been a proper decision as to whether or not Prouty presently resided in Arizona. I think we understand your position. You shouldn't spend all your time on this. I mean, your position is that there wasn't sufficient place jurisdiction in Arizona. Yes. Okay, I'm just answering your question. We don't agree with the principle, so go ahead. All right. So what was the last thing you said, Your Honor? I said you don't agree with that conclusion, and it carries today as a judicial admission, so you can move on to the next part. As to July 31, 2013, my client left Arizona to return to Illinois, and at that time there was no order prohibiting, I'm going to call her MEP or MEP, from leaving the state of Arizona. And the Arizona court had expressed concern that the original custody order had not been properly registered at that time. The warranted issue was issued by the Arizona court on November 12, 2013. At that time, the court only had temporary emergency jurisdiction relating to the emergency motion and emergency issues at hand. So soon thereafter, on November 18, 2013, the parties entered into an agreement in Illinois as to parenting time. At that time, neither mother, father, or child resided in Arizona. At the time of the warrants under Section 202 of the UCCJDA, Illinois courts had not determined that Dana did not have significant connection with Illinois or that there was no substantial evidence that was available in Illinois concerning MEP's care, protection, and personal relationship. And there had been a finding that, and our position is that Dana did not presently, that there had not been a finding as to the fact that Dana had left Illinois or did not presently reside in Illinois. So is it your position that the warrant shouldn't have issued? Our position is that the warrant, because it was issued under temporary jurisdiction of 204, should have been sent back to Illinois for modification because under Section 203, which deals with modification, Arizona didn't have jurisdiction to modify it. Well, let me stop you right there. Let's assume that a court improperly or improperly issues a warrant to somebody in another state. The warrant issue is out of state. What is the other state, the receiving state, supposed to do? Can you attack the warrant, in this case in Illinois, or don't you have to attack it in Arizona? Arizona had emergency jurisdiction under Section 203. The question of jurisdiction isn't the question. If they improperly, and you assume it was improperly issued, it should have never been issued. It ends up in the receiving state, and there's a warrant out, and somebody gets stopped in a car and do no frivolous acts of criminal cases, there's a warrant. Can you attack the warrant in that state, or do you have to attack it where it was issued, is my question. And the answer to your question is, it was issued under the UCC, JEA Section 204, which is temporary jurisdiction. It had to have been, it was registered in Illinois. Right, it was in Illinois. So at that point in time, when it was before the courts, when we went in front of Judge Johnson in January of 2015, and we argued to the judge under Malgar v. Campbell, which I have four copies for the courts. I can tender it to the court if the court wants.  Arizona did not have any type of jurisdiction to modify custody, or enter any type of orders that could potentially modify custody under Section 203. So we filed a motion with Judge Johnson saying it's not properly before the courts. We should have an evidentiary hearing to see whether or not the emergency, which may or may not have been present back in 2012, was still an emergency, because that warrant and all emergency orders in Arizona were based on an emergency, which may or may not be the case today. So basically then Illinois is supposed to act as a court of review over the proceedings in Arizona. That's the gist of what you're saying. No, Your Honor, that's not what I'm saying. I'm saying in this particular case. But that's the practical effect. If the court in Illinois makes a determination about the correctness or legitimacy of an Arizona warrant, they're not acting as a court of review? No. Illinois is deciding whether or not an emergency still exists. Illinois always retains initial and then later on continuing exclusive jurisdiction. Jurisdiction was only transferred to Arizona, if at all, for temporary purposes under 204. Our position is that there was no jurisdiction for Arizona to issue the warrant other than temporary jurisdiction, and Illinois had to decide whether or not the emergency still existed. Justice Slepsin's point is that you're arguing basically after the fact that the warrant should have been quashed, should have done that in Arizona. That's where she should have gone when she found out when the warrant was enrolled in Illinois, correct? There was an order in December of 2013. And she was in the closet. She was present. She should have gone to Arizona to get that warrant quashed. That position that we have. She could have done that, correct? I disagree with you, Your Honor, that the warrant does not have – it was issued without jurisdiction. Was the warrant stamped temporary jurisdiction or emergency warrant only? No. Every single piece of – every single order under the emergency proceedings in Arizona were emergency proceedings, and the only jurisdiction that Arizona had was emergency jurisdiction. Illinois had exclusive jurisdiction. Only Illinois had exclusive jurisdiction. That would relinquish that jurisdiction. Illinois has exclusive continuing jurisdiction. Arizona did not. And we were asking Judge Johnson – The question of jurisdiction with compliance with the Act. Illinois still has jurisdiction, but compliance with the Act is a different issue.  I don't understand your question, Your Honor. In McCormick, the Illinois Supreme Court discussed the concept of jurisdiction and also discussed compliance with the Act are two different things. Correct. So Illinois could still have jurisdiction and say, you know, this matter, Arizona has jurisdiction. In fact, that's what happened here, isn't it? Wasn't there a conference between the judges? There was a telephone call between the judges, and there was – The Illinois judge said this is going to be an Arizona matter, correct? That's not our interpretation of what happened in December 2013. What happened? Our position is that if you look at the transcript, you look at the entire circumstances surrounding the transcript, what happened was the court said these matters, these emergency type of matters, what was before the court in December 2013 were emergency matters. There already were emergency matters pending in Arizona. Our position is that when the judge said these matters, these emergency matters, should go to Arizona where there's emergency matters that are pending. These matters. And the same thing happened with Judge Strickland in 2014. There was a TRO that was brought before the court. TRO is by definition emergency, and these emergency matters that are in Arizona should be combined with the Illinois emergency matters. And so, therefore, that's consistent with only emergency jurisdiction in Arizona. Now, hang on a second. There was a couple of orders that were entered prior to the January 5th order, correct? There was a couple of early orders. There was one in December of 2013, and then there was one with Judge Strickland also, and that was in July of 2014, yes. What about the order when the trial judge stated, well, vacating the emergency order, quote, unquote, all further proceedings should be held in the state of Arizona. What do you make by the phrase all further proceedings? Does that sound like it's limited? If you look at the entire context of the entire transcript, the words are invalid, these matters. And these matters were the— I think that was the earlier order. I think there's another order you're overlooking here. The judge vacated the emergency order. The language was all further proceedings should be held in the state of Arizona. You know what we call that order? But right before—but what was before the courts were the emergency proceedings, and you have to look at the entire context. You can't take something out in a vacuum and say—and say, well, you know, you have to look at the context of everything. And within the context of— How could it be broader than that?  What order are you referring to, Your Honor? I don't have the date. There was a couple of orders. In the earlier order, you said the trial judge stated Arizona was the proper forum to litigate these matters. These matters. And that's what you're talking to, and I agree that's a little more limited. There was a second order where the trial judge stated, while vacating the emergency order, all further proceedings should be held in the state of Arizona. Okay, so— And that order entered. So now I remember what this is. This relates to Judge Strickland's proceedings in July of 2014, which was a temporary restraining order, T-R-O-L-A, emergency. The entire proceeding was an emergency. So our position is he was referring to what was— what he was deciding before him at the time, which was emergency-type stuff. And again, all types of emergency-type things should be in Arizona. It was before the judge was a T-R-O-L-A. Why should they be in Arizona if Illinois has original jurisdiction and the child is in Illinois now? Without going to the judge's mind when they said that, Arizona already had temporary emergency proceedings going on at the time. Judicial— Yeah, but according to you, it's void, so what's the point? I mean— No, I'm not saying it's void. What I'm saying, Your Honor, is what should have been done was if there was a proceeding in Arizona that potentially could affect child custody terminations, there would have to be a return back to Illinois to formalize the modification and under Section 203. And that was never done. And that was the point I made back in January 2015 when I was in front of the judge. As a judge, let's just have that determination. Let's set this for hearing for a later time where we can present evidence and the court can make a determination, and that's not what happened that day. Okay, any other questions? Thank you. You'll have an opportunity to make rebuttal. All right, thank you. You don't have any questions regarding Turk or any of the other issues in the case? Well, we may ask questions of Appleby's counsel, and depending on the response that is given, you might want to, under rebuttal, get up and voluntarily address those issues. Okay, great. Thank you, Your Honor. Good morning, lawyers. Good morning, Mr. Ostrow. May it please the Court. What about Turk? With regard to Turk, I think that Judge Johnson correctly analyzed that this was not a Turk case. Turk was based on the fact that the parties were going to share parenting time and that it would be unfair for the child to have a significantly lesser standard of living in one home than the other. Judge Johnson said that this is not a shared parenting time situation. Ms. Prodi has supervised visitation and is fairly time limited in Nebraska, and the fact that that involves an expense is her own doing. And I think that those conclusions are correct. I would also say that there was not an exhaustive inquiry into the parties' respective economic conditions here. However, in the petition that started this in November of 2013, Ms. Prodi said she owned a house in Arizona, which is part of the residency aspect of Arizona, and she actually filed numerous pleas in Arizona where she listed an Arizona address as her residence. She engaged attorneys, multiple attorneys in Arizona, multiple attorneys here, appealed. She had two cases going here, two cases in Arizona. How does this relate to Turk? I think it relates to the fact that, yes, there was not much of an inquiry into the respective economic circumstances of the party, but some of them would have been apparent to the Court. Well, let me ask you a point of question. Does the trial court here have the authority to terminate the respondent's child support obligation retroactively at the time the Arizona war was issued? Isn't that in violation of Peterson? The fact of the matter is that going back to 2012, I have a timeline that I wrote down. To answer that question, Peterson calls for it when the petition to modify is filed. Peterson prohibits ostensibly doing this when the war was issued unless we get into this estoppel that I'm very curious about. You've read the Peterson case, right? Yes. Does that provide authority for the Court to do what it did in this case? I don't think Peterson provides that authority. I think what provides the authority is the fact that the custody of MEP was awarded by agreement, I might add, to Mr. Hughes in 2012 and was never, I think it was briefly revested with Ms. Prudy by Judge Ostrowski, no relation. I think it was his name in Arizona. But then in May, the case went to Judge Polk, and a temporary custody order was entered by Judge Polk in July of 2013. So what was the basis, though, or the rationale for the trial to have retroactively terminated the respondent's child support? Based on what, estoppel? Yes. Did he articulate why he did that? Judge Johnson? Yes. I don't recall him doing so, so I'm not going to. I believe the transcript's in the record. I do not recall him. I believe he did make some reference to the fact that Ms. Prudy had not been legally the custodial parent for quite some time, and that she had kept the child from Dr. Kafka for over a year. I mean, that could be inferred. Maybe he felt that somehow in his mind she thwarted the custody order, and therefore it played into the estoppel. But estoppel is a complicated doctrine, as I'm sure you know. Yes. And I think I'm a little troubled by it. I don't see a clear rationale for how he applied it, unless you can supply that rationale. Well, one should not benefit from one's own misconduct. And I realize it's the child that benefits from child support. I'm not saying that that isn't the case. Although what happened here was the child was supposed to be turned over in November of 2013. Dr. Kafka did not get possession of the child until January of 2015, 14 months later. I'm not going to go into great detail about the decision that Judge Polk issued in May, which the court has, but there's a couple of things of note that relate to this. One is she was in a violation of a court order when she came here and didn't return MEP. He goes through Dr. Kafka's numerous attempts to get possession of the child once the warrant was enrolled, all of which was thwarted by Ms. Brody, including taking the child out of school once Mr. Kafka knew where the school was, moving the child around, taking the child from Wisconsin. And it just seems horribly inequitable for Dr. Kafka, who was also litigating in two states with Ms. Brody at the same time, to have to have borne an expense of child support for a child that should not have been, for whom Ms. Brody should not have been incurring any expenses. What's your response to opposing counsel's argument? One of his key points is Illinois did not formally relinquish jurisdiction. Well, I have a few things to say about that. One is that on page 63 of Judge Polk's final findings, he says that Mr. Stein's statement in court in front of Judge Johnson in January that Arizona had only exercised emergency temporary jurisdictions is false, and neither he nor Judge O'Malley ever said that or suggested it. Also, in 2012, Ms. Brody filed a severance, which was also called a termination petition, of parental rights for Dr. Kafka. This was a parentage case in Illinois. The only parental rights he possibly could have been forced to give up were the ones that were in the Illinois custody order of 2010. So she was the person who relinquished Illinois's primary authority over this by moving to Arizona, staying in Arizona, seeking to essentially have the custody modified. So is your position that a judicial acknowledgment would carry the day? I think it does, but there's a great deal more than just the judicial acknowledgments that she lived in Arizona. There were the pleadings that she filed in Arizona and the findings by Judge Polk in Arizona, which are part of this record, and I'm not even talking about the final ones, which were submitted recently, but in his interim orders at Judge O'Malley. What's the significance of spreading of record what took place in Arizona? Well, as I said in the motion in which I was asked to do that, Section 209 of the UCCJ actually requires the parties, if an order has been entered in another state, in this sort of dispute which could relate to what's pending before the court in the other state, it is supposed to be brought to the court's attention. And I did in my motion, I made reference to that and said, you know, if the court, I didn't submit those documents at that time. I said if the court permits, I will spread them of record. Judge Polk heard a great deal here and his orders are exhaustive. And they do give a very- What's the responsibility to file? It says- How much do the appellees- It just says, well, 209, it says should bring it to the attention of the court, which in most instances would be the trial court. But it says the parties. It doesn't say, 209 doesn't refer to either the petitioner or the respondent, appellant, appellee. And part of the significance of the final decision that was rendered by Judge Polk here is this, that in all of these cases, as I'm sure the court is well aware, that the paramount concern is the best interest of the child. And this was not postured as an appeal that should have been accelerated. Whether it would have been had it been an attempt to be postured in that manner, I don't know. It wasn't appealed back in November of 2013 when Warren was enrolled here to be enforced. And as a consequence of that, the child went through the preceding psychological evaluations. There was a trial in Arizona. The child lived in Illinois, then was taken to Arizona by her mother where she lived for a while, then came back here to Illinois in violation of a court order by her mother, then was ordered to be transferred over to the physical possession of Dr. Cochran. She's now lived in Arizona for a year and a half. There's been a custody trial in Arizona. I think this child's had enough. I think there was an exhaustive best interest inquiry that took place in Arizona. And since Arizona did exercise jurisdiction properly, there's also a full-face and private impact at this point, I would think. There were other matters I wanted to touch upon. I do want to say, too, that the petition that started this on November of 2013 was profoundly untrue. The petition that was filed, the emergency petition to stay the warrant that had been issued in Arizona, it did not tell Judge O'Malley that temporary custody had been granted to Dr. Cochran in Arizona. It did not tell Judge O'Malley that this party had filed to terminate Mr. Cochran's parental rights in Arizona. She did not tell the court. You're raising this because it bears on jurisdiction or the... Yeah, well, I think that the... That was her original argument for Illinois maintaining jurisdiction. And she told the Illinois court that Arizona had not exercised jurisdiction and wouldn't have jurisdiction. And that was just not true. And so Judge O'Malley initially stated enforcement of the warrant, but once she talked to Judge Polk and once she saw the response to the petition with the Arizona orders attached, she changed her mind, and rightfully so. There's been no inquiry, and maybe there needn't be, as to whether there was a default order in January which I was turned over. I think I'd stand on my grief on that. All it was doing was enforcing a previous existing order. There was no new relief granted, and a warrant can be enforced in any practical way available. If there are no further questions, I will... Thank you. Okay, turn it back to Mr. Stein. Thank you. Mr. Stein. Thank you, Your Honor. Would it be safe to say that the basic timber of your appeal relates to what you believe to be procedural defects? Because it doesn't seem to me that you're attacking the findings of the court as against the manifest weight of the evidence. We're attacking jurisdiction. And we believe that Illinois has original and continuing jurisdiction, and Arizona only had temporary jurisdiction. And that is the major argument we raise. But we also, there's some other things that haven't been addressed. On November of 2013, there was an agreement between the parties as a parental agreement. And I think that also conferred jurisdiction, and that agreement has never been rescinded. We talked about that. That's under 202. That would carry the day unless the person no longer resides in the state. That trumps the agreement, okay? You can make the arguments, but that's what they're pointing to. Yes, Illinois had original and continuing jurisdiction, but if the party acknowledges living in and is proceeding in different states, that would be a basis for relinquishing. Yeah. Why don't we cut to the chase here, okay? In cases like this, I think we can all agree there's personal and subject matter jurisdiction, undoubtedly in Illinois, and also ostensibly in Arizona. The issue, the real question isn't whether Illinois had jurisdiction under the Act, because that's the same in all of these cases. It's whether the court should exercise the jurisdiction. That's the point of the Act, isn't it? It doesn't mean that it could never end up somewhere else because one forum originally had the jurisdiction. It's whether or not under the Act the state should continue to exercise exclusive jurisdiction. And our position is that Illinois never relinquished that jurisdiction. And the point I think you're missing is my point on the contract. The contract was something that was a private agreement between the parties regarding a parenting arrangement, and that confers jurisdiction outside of the UCCJEA. And that was a point that I was raising before. It was never rescinded. It was a private agreement. There's something in one of the documents that says that it was supposed to be private and not put into the public confidential between the parties. I've put it into the record. It's in the appendix. That's key. I also want to raise a TURC issue. The whole thing that's missed by a via poli is the best interests of the child. The person that's being punished by Miss Prouty not being able to see her child because of the financial issues is the child. The child is being deprived of her natural mother. The father makes $360,000 a year, and it's been basically stipulated that my client is indigent and doesn't have the funds to exercise her visitation rights, which makes them meaningless. Well, that brings me to my concern, as I raised with Respondent's counsel. How did the judge then decide that the support should be terminated retroactively? What was the rationale for applying when it appears to me to be ostensibly some kind of an estoppel order? My reading of the transcript is, with all due respect to Judge Johnson, he didn't have any rationale. He just came up to the conclusion that every child should get $50 and left it at that and then reversed himself. He didn't explain himself at all. You were there when the order was up? Yeah, I was there, and the transcript is clear. He just basically says every child should get $50 a week from a parent and left it at that. How did it end up at zero? He just basically stated the trick doesn't apply and reversed himself. It wasn't very reasoned, again, with all due respect to Judge Johnson. And then the other issue was not appealing the issue in December of 2013. It was transferred to Arizona for these matters, which was temporary, and so there was not an appeal. I was just looking at that transcript. Again, the judge said Arizona should have jurisdiction. As to these matters, and 204 is jurisdiction. What page of the appendix is that language in? Let me find it. Okay. It's in my brief. Hold on here. It looks like I cited it at 8332. I do find under the UCCJEA, Arizona is the proper forum for the mother to litigate these matters in the manner that has come to Illinois in direct violation of the Arizona orders with the child, in keeping with the child, keeping the child from the father, et cetera. But what efforts did Ms. Prouty make to go back to Arizona to recall the warrant after that date, December 16th of 2013? What efforts, if any? The litigation was still ongoing, Your Honor. But the litigation was still ongoing. In Arizona, pursuant to emergency jurisdiction. And what efforts did she make in Arizona to recall the warrant or have the Arizona court quash the warrant? The position is that Arizona only has emergency jurisdiction. Answer my question. Did she make any efforts in Arizona to recall that warrant? There may have been a motion to reconsider. I was an Arizona counselor, Your Honor.  I do. Did she make any efforts? I'd say yes or no. I don't know the answer, Your Honor, at this time. I can supplement, Your Honor. I'll take that as a no. I can supplement that to answer your question, if need be. I don't know the answer. The record speaks for itself. The record speaks for itself. Thank you. I asked Mr. Ostroff, whose burden is it to perfect the record and transcribe the proceedings in Arizona and make it part of the record for purposes of review here, either in the trial court or the appellate court? Is it the appellants or the appellees? The statute doesn't say the parties. What about Fauch v. O'Brien? Say that again, Your Honor? Fauch v. O'Brien. It's a case. Are you familiar with that case? I am not, Your Honor. It places the burden on the appellant to establish a sufficient record or, I should say, to perfect and prepare and file a sufficient record to establish error. It's not the appellee's burden. So had the appellee not done so, it would appear that you might have been Fauched, as the slang is, and meant that for failing to prepare and perfect the record, we will presume that whatever was done below was done correctly. Okay. But that's just a slight aside, an educational point for future reference. Thank you, Your Honor. One last thing I want to correct. I thought I heard Mr. Ostrowski say that the child lived in Arizona for a year and a half since 2013, and the child now lives in Nebraska with the father. The father is now in Arizona. The father never lived in Arizona. The father is a Nebraska citizen. So I just wanted to be clear that the father, and at the current location of the child, as best I know, unless the father is left in Nebraska without my knowledge, I know that on January 2015, he was taken, she was taken to Nebraska. And that is where the child lives in Nebraska. I have one more question. You, when you first got up, made a reference to Turk. Yes. And what I believe you said was that there should be child support payments so that she could attempt to protect or perfect her visitation rights. And I don't know that Turk says anything about using child support for anything other than the cost of supporting a child. So is there some aside or footnote, some overdictum in Turk that says that the richer of the two parents should subsidize the opposing parent in order to see to it that the playing field is leveled insofar as present, future litigation is concerned? The general policy of Turk is that you look at the best interest of the child and to see whether or not the child should be deprived of her mother. And at the end of the day, whoever is, who is suffering is not Ms. Prouty, not Dr. Kafka. You look at the child. And the child is being deprived of her natural mother. And it's because, it's nearly because of finances. You're punishing, if you take the estoppel argument argued by Mr. Ostrow, he's saying estoppel. At the end, who's the one that's being punished? The one that's being punished is the child. Every child should be able to see her mother. And we have a doctor who makes a lot of money and we have a woman who's indigent. When you say indigent, she's not working at all? At the time of the ruling, I don't believe she was working. And we submitted a financial affidavit to Judge Johnson. He looked at it and the party stipulated that she has nothing. And so, and Mr. Dr. Kafka submitted his financial affidavit. So if you look at the overreaching language of Turk, the touchstone that they mentioned for determining child support, is you look under the law, the touchstone for determining child support is the best interest of the child. The best interest of the child is mentioned many times. And there could be no dispute that it is in the best interest of a child, any child, to not be away from her natural mother. And if the father has a way to do it, to get the mother over or to assist, to help the child, which should be in his interest as well to have the best interest of the child at hand, it should be done. Thank you. In case you'll be taken under advisement, there will be a short recess. Thank you. Thank you, Your Honors.